# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PALTALK HOLDINGS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 16-1240-SLR |
| | ) |
| RIOT GAMES, INC. | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM ORDER

At Wilmington this ⁱ⁵ᵗʰday of May, 2017, having reviewed the papers submitted in connection with defendant's motion to dismiss (D.I. 9), the court issues its decision as follows:

1. **Background.** PalTalk Holdings, Inc. ("plaintiff") is the owner of U.S. Patent Nos. 5,822,523 ("the '523 patent") and 6,226,686[1] ("the '686 patent) (collectively "the patents-in-suit"). (D.I. 1 at ¶¶ 6-7) The patents-in-suit relate to distribution of messages between computers in interactive environments, such as online gaming. (D.I. 1 at ¶¶ 11-14) Riot Games, Inc. ("defendant") publishes video games such as League of Legends, which is a multiplayer online video game. (D.I. 1 at ¶ 22) On December 16, 2016, plaintiff filed an action against defendant, alleging that defendant directly infringes the patents-in-suit. (D.I. 1) Defendant moved to dismiss for failure to state a claim for relief under Federal Rules of Civil Procedure 12(b)(6). (D.I. 9) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

---

[1] The '686 issued on an application that is a continuation of the '523 patent application.

**2. Standard of Review.** A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

3. Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and

"accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at \*4 (quotation marks, citation, and emphasis omitted).

4. As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

5. **§ 101.** Defendant argues that dismissal is appropriate, "because the asserted patents do not claim patent eligible subject matter under 35 U.S.C. § 101." (D.I. 10 at 1) The Patent Act extends patent protection to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . subject to the conditions and requirements of this title." 35 U.S.C. § 101. Despite the protections of § 101, the Supreme Court has held that, "[e]xcluded from such protection are laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, _ U.S. _, 132 S.Ct. 1289, 1293 (2012). In *Alice*, the Supreme Court endorsed a two-step "framework for distinguishing patents that claim laws of nature, natural

3

phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, _ U.S. _, 134 S.Ct. 2347, 2355 (2014). First, the court must determine if the claims at issue are directed to a patent-ineligible concept. *Id.* If the answer is no, that ends the matter and the defendant's motion is denied. *See, e.g., Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (finding in step one that the claims were not directed to an abstract idea and, therefore, not addressing step two). If, however, the answer is yes, then the court must "determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 134 S.Ct. at 2355.

6. **Alice, Step One.** "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish*, 822 F.3d at 1335 (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed.Cir.2015)). While the Supreme Court "has not established a definitive rule to determine what constitutes an 'abstract idea' . . . . [, it is] sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.* at 1334. Defendant argues that claim 1 of the '523 patent and claim 7 of the '686 patent are "substantially identical" and are representative of all the claims in the patents-in-suit, because claims 1 and 7 are directed to "the abstract idea of group communication that uses an agent to aggregate those communications for delivery,"[2] and "the remaining claims are directed to this same abstract idea under *Alice* step 1." (D.I. 10 at 5-6, 18) Defendant contends that claims 1 and 7 are similar to claim 1 of U.S. Patent No. 6,073,142 ("the '142 patent"), which was found to be invalid under § 101.[3] (D.I. 17 at 2-3, citing *Intellectual*

---

[2] Elsewhere, defendant argues that the claims "are directed to the abstract idea of using a central office to bundle group communications for delivery." (D.I. 10 at 18, 20)

[3] Defendant raised the comparison to case law in its reply brief and at oral argument. (D.I. 17 at 2-3) Prior to that, defendant had argued an analogy to a "hypothetical inter-

4

*Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016))  Meanwhile, plaintiff cites *Enfish* and argues that the patents-in-suit are not directed to an abstract idea and, instead, "claim a specific improvement directed to solving a critical problem in the prior art that specifically arises in shared, networked, interactive computer applications such as online games." (D.I. 16 at 11 (citing '523 Patent, 2:47-3:22))

> 7. **The claims.** Claim 1 of the '523 patent recites:
>
> A method for providing group messages to a plurality of host computers connected over a unicast wide area communication network, comprising the steps of:
>
>> providing a group messaging server coupled to said network, said server communicating with said plurality of host computers using said unicast network and maintaining a list of message groups, each message group containing at least one host computer;
>>
>> sending, by a plurality of host computers belonging to a first message group, messages to said server via said unicast network, said messages containing a payload portion and a portion for identifying said first message group;
>>
>> aggregating, by said server in a time interval determined in accordance with a predefined criterion, said payload portions of said messages to create an aggregated payload;
>>
>> forming an aggregated message using said aggregated payload; and
>>
>> transmitting, by said server via said unicast network, said aggregated message to a recipient host computer belonging to said first message group.

('523 patent, 28:4-27)  The preamble of claim 1 recites "a plurality of host computers connected over a unicast wide area network." ('523 patent, 28:4-6)  This phrase provides antecedent bases for "said plurality of host computers," "said network," and "said unicast network" elsewhere in claim 1 and, therefore, is limiting. ('523 patent, 28:8-9; 28:9-10; 28:14-15; 28:25)  In light of the specification, claim 1 is limited to

---

office mail" system, which involves matter outside of the pleadings. (D.I. 10 at 12-15)  Plaintiff disagrees with how the inter-office mail analogy would apply to the claims at issue.

unicast networks, as opposed to the multicast and asynchronous transfer mode ("ATM") architectures as discussed in detail with reference to the prior art. ('523 patent, 4:29-7:19) Claim 1 is limited, among other things, to sending aggregated payloads and aggregating payloads by time interval. ('523 patent, 10:20-49; 28:18-21; figure 7, items 100, 101, 102, and 103)

  8. Claim 7 of the '686 patent recites:

   A method for facilitating communications among a plurality of host computers over a network to implement a shared, interactive application, comprising the steps of:

   (1) receiving messages from a subset of the plurality of host computers belonging to a message group, wherein each of said messages contains a payload portion and a portion that is used to identify said message group;

   (2) aggregating said payload portions of said messages to create an aggregated payload; and

   (3) transmitting said aggregated message to each of the plurality of host computers belonging to said message group;

   wherein said aggregated message keeps the shared, interactive application operating consistently on each of the plurality of host computers belonging to said message group.

('686 patent, 28:59-29:7) Claim 7 is limited to situations "wherein said aggregated message keeps the shared, interactive application operating consistently on each of the plurality of host computers belonging to said message group." ('686 patent, 29:4-7) The antecedent basis for "the shared, interactive application" in the wherein clause is the preamble, which recites "a shared, interactive application." ('686 patent, 28:60-61; 29:4-5) The preamble also recites "a plurality of host computers," which provides antecedent basis for "the plurality of host computers" elsewhere in the claim. ('686 patent, 28:62-63; 29:1-2; 29:5-6) Therefore, the preamble of claim 7 limits the claim to communications among a plurality of host computers connected over a network to implement shared, interactive applications. Claim 7 is limited, among other things, to

6

sending aggregated payloads. ('523 patent, 10:20-49; figure 7, items 100, 101, 102, and 103)

9. **Analysis.** In *Intellectual Ventures I*, the Federal Circuit upheld a district court's finding that various claims of the '142 patent were invalid for failing to claim statutory subject matter under § 101. Defendant asserts that claims 1 and 7 are similar to the claims in the '142 patent and, therefore, are directed to an abstract idea. (D.I. 17 at 3) Claim 1 of the '142 patent recites:

> A post office for receiving and redistributing email messages on a computer network, the post office comprising:
>
> > a receipt mechanism that receives an e-mail message from a sender, the e-mail message having at least one specified recipient;
> >
> > a database of business rules, each business rule specifying an action for controlling the delivery of an e-mail message as a function of an attribute of the e-mail message;
> >
> > a rule engine coupled to receive an e-mail message from the receipt mechanism and coupled to the database to selectively apply the business rules to the e-mail message to determine from selected ones of the business rules a set of actions to be applied to the e-mail message; and
> >
> > a distribution mechanism coupled to receive the set of actions from the rule engine and apply at least one action thereof to the e-mail message to control delivery of the e-mail message and which in response to the rule engine applying an action of deferring delivery of the e-mail message, the distribution engine automatically combines the email message with a new distribution list specifying at least one destination post office for receiving the e-mail message for review by an administrator associated with the destination post office, and a rule history specifying the business rules that were determined to be applicable to the e-mail message by at least one rule engine, and automatically delivers the e-mail message to a first destination post office on the distribution list instead of a specified recipient of the e-mail message.

('142 patent, 27:2-32) The district court held this claim to be directed to the "abstract idea of implementing post office functionality via a computer." *Intellectual Ventures I*

*LLC v. Symantec Corp.*, 100 F. Supp. 3d 371, 391 (D. Del. 2015). The Federal Circuit upheld the district court's invalidity finding under § 101, noting that:

> The written description is particularly useful in determining what is well-known or conventional. The '142 patent's abstract describes the invention as "[a] system, method and various software products . . . for automatic deferral and review of e-mail messages and other data objects in a networked computer system, **by applying business rules to the messages as they are processed by post offices**." Claim 1 also describes the patented system as a "post office"—albeit an electronic one. The district court held that "the asserted claims of the '142 patent are directed to human-practicable concepts, which could be implemented in, for example, a brick-and-mortar post office."

*Intellectual Ventures I*, 838 F.3d at 1317 (emphasis added) (citations omitted). The '142 patent claimed a "post office" and disclosed the operation of a brick-and-mortar post office. (*See* '142 patent, 1:14-33) The district court took note of the operation of a post office, because the specification invited the comparison.

10. The '523 and '686 patents (which share a common specification) invite no such comparisons. Therefore, *Intellectual Ventures I* is distinguishable on the facts. For example, the specification does not discuss post offices, mailrooms, e-mail, central offices, agents or any of the concepts asserted by defendant. Nor does the specification disclose brick-and-mortar comparisons to the key limitations of claims 1 and 7, which include: connecting a plurality of host computers over a unicast wide area network; aggregating message payloads by time segment; communicating among a plurality of host computers connected over a network to implement shared, interactive applications; sending messages containing aggregated payloads; or keeping a shared, interactive application operating consistently on each of the plurality of host computers.

11. Absent clear direction from the specification, the prosecution history, or the pleadings, a comparison or analogy to post offices, mailrooms, or other aspects of the '142 patent could enter the record through extrinsic evidence such as dictionary definitions or expert reports. However, as with defendant's analogy to a "hypothetical

8

inter-office mail system," this would constitute matter beyond the pleadings.[4] Therefore, defendant fails to carry its burden under *Alice* step one to demonstrate that claims 1 and 7 are directed to an abstract idea.

12. Meanwhile, plaintiff contends that the claims are directed to a technical solution to a technical problem. (D.I. 16 at 11-13) "[T]he first step in the *Alice* inquiry . . . asks whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1335-36. The specification describes the technical challenge inherent to shared, interactive applications:

> [T]he present invention deals with the issues of deploying an interactive application for multiple participants on wide area networks by providing a method for reducing the overall message rate and reducing latency. This invention uses a server group messaging approach, as oppose[d] to the above described "distributed multicast messaging" approach. The present invention overcomes the undesirable side effects of the distributed multicast messaging approach. Further, it reduces the message rate between the hosts. As pointed out in an example discussed above, with prior art distributed multicast messaging, each host will need to send only one message to the group containing all of the hosts seven times per-second, but will still receive 9 messages, seven times per-second. The present invention of server group messaging has each host sending one message, seven times per-second and receiving one message, seven times per-second.

('523 patent, 11:26-42) The specification explains that sharing updates between host computers is a key technical challenge in shared, interactive applications such as online gaming. ('523 patent, 1:11-11:67) Claims 1 and 7 address, among other things, the improvement associated with the datagram shown in figure 7 with respect to items 100 through 103. ('523 patent, 10:20-49; figure 7, items 100, 101, 102, and 103) This improvement includes the group message server and the aggregated payloads shown

---

[4] *See supra* note 3.

in the figure and described in the claims. The specification indicates that this technical challenge is unique to the world of interactive software applications shared over a computer network. Therefore, as with the relevant case law, the specification supports the conclusion that the invention in claims 1 and 7 is "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). For these reasons, claims 1 and 7 are not directed to an abstract idea, and defendant's motion to dismiss is denied. *Enfish*, 822 F.3d at 1337.

13. **Conclusion.** For the reasons stated, defendant's motion to dismiss (D.I. 9) is denied.

Senior United States District Judge